UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KAREEM W.,
    *Plaintiff*,

v.

LEE DUDEK, Acting Commissioner of the
Social Security Administration,
    *Defendant*.

No. 3:24-cv-797 (KAD)

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
AND DENYING ACTING COMMISSIONER'S CROSS-MOTION TO AFFIRM**

Plaintiff Kareem W. ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of the Acting Commissioner of the Social Security Administration ("Administration"), denying his application for disability benefits pursuant to Title II of the Social Security Act ("Act"). Plaintiff moves to reverse the Acting Commissioner's decision insofar as the Administrative Law Judge ("ALJ") failed to adequately develop the record, arguing that Plaintiff's residual functional capacity determination was not supported by substantial evidence. Alternatively, he seeks a remand for further proceedings before the Acting Commissioner. In response, the Acting Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, Plaintiff's motion to remand is GRANTED and the Acting Commissioner's motion to affirm is DENIED.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits under Title II on April 27, 2021.[1] Doc. #13 at 195 (Tr. 191); *see also id.* at 28 (Tr. 24). He alleges a disability onset date of

---

[1] Page references to the administrative record/transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. *n*).

1

April 27, 2021. *Id.* at 28 (Tr. 24). The Social Security Administration initially denied Plaintiff's claims on June 24, 2021, and again upon reconsideration on February 15, 2022. *Id.*; *see also id.* at 104 (Tr. 100). Plaintiff then timely filed a written demand for an administrative hearing. *Id.* at 109 (Tr. 105).

At the February 7, 2023 hearing, Plaintiff testified before ALJ Kuperstein. *Id.* at 172 (Tr. 168). A vocational expert, Frank Lindner, also testified. *Id.* at 182 (Tr. 178). On April 25, 2023, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 25 (Tr. 21). On February 27, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 5 (Tr. 1). Plaintiff then timely filed this federal action, seeking review of the ALJ's decision. *See* Doc. #1.

## STANDARD OF REVIEW

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition

of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform their past relevant work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).[3]

Here, at Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 27, 2021, the alleged onset date, through April 25, 2023, the date of the ALJ's decision. Doc. #13 at 30 (Tr. 26). At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: Degenerative disc disease with a history of laminectomy, carpal tunnel syndrome of/median nerve entrapment at the right wrist, and obesity.

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."
[3] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*Id.* at 31 (Tr. 27). The ALJ also noted that Plaintiff's impairments "significantly limit [his] ability to perform basic work activities." *Id.*

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*; *see* 20 C.F.R. 404.1520(d), 404.1525, & 404.1526. The ALJ then found that Plaintiff has the residual functional capacity (RFC) to perform "less than a full range of light work." *Id.* at 32 (Tr. 28). The limitations in the RFC were:

> [L]ifting or carrying or pushing or pulling 20 pounds occasionally and 10 pounds frequently; [] standing or walking with normal breaks for a total of six hours in an eight hour workday; [] sitting with normal breaks for a total of six hours in an eight hour workday; [] only frequent climbing of ramps or stairs, or balancing; [] only occasional climbing of ladders, ropes, or scaffolds, stooping, kneeling, crouching, or crawling; [] only occasional overhead reaching bilaterally; and [] only frequent fingering with the dominant right upper extremity.

*Id.* In determining Plaintiff's RFC and its attendant limitations, the ALJ considered Plaintiff's allegations about the persistence and the severity of his symptoms. The ALJ concluded, however, that while the medically determinable impairments could indeed be expected to cause the alleged symptoms, the "extent of the [Plaintiff]'s statements about the intensity, persistence, and functionally limiting effects of his symptoms are not supported by the objective medical evidence." *Id.* at 33 (Tr. 29).

The ALJ explained that Plaintiff's allegations were undercut by the fact that there was a "significant gap in [Plaintiff]'s history of treatment, which gap has extended at least through his . . . hearing date." *Id.* at 35 (Tr. 31). The ALJ also stated that because Plaintiff had "failed to provide acceptable good cause reasons for not seeking further treatment," the gap in treatment

4

suggests "that [Plaintiff]'s symptoms may not be as limiting as he has alleged."[4] *Id.* The ALJ further relied on diagnostic studies, clinical findings, and physical examinations, which the ALJ concluded did not support Plaintiff's allegations. *Id.* at 33 (Tr. 29). As discussed in greater detail below, the ALJ did not make any findings as Plaintiff's need for a cane, but did note that Plaintiff had testified to needing one at his February 2023 hearing. *Id.*; *see also id.* at 54 (Tr. 50).

At Step Four, the ALJ determined that Plaintiff was able to perform past relevant work—specifically, work as a retail manager—but unable to work as a shoe associate, laundromat manager, or grocery clerk (Plaintiff's other past occupations). *Id.* at 37 (Tr. 33). In reaching that determination, the ALJ relied on the testimony of the Vocational Expert. *Id.* The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

Plaintiff sought review of the ALJ's decision from the Appeals Council, but his request was denied. This timely appeal followed.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have

---

[4] Plaintiff counters this assessment by arguing that the so-called "gap in treatment" was no gap at all, merely a reflection that Plaintiff had reached maximum improvement and that no further treatment would ease his symptoms. The Court does not take up this issue and leaves to the ALJ on remand to address these arguments.

ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff argues, *inter alia*, that the ALJ erred in formulating the RFC by not accounting for Plaintiff's gait and balance limitations. Doc. #16 at 17. More specifically, Plaintiff clarified at oral argument that the RFC does not account for Plaintiff's need for, and use of, a cane; that the RFC is inconsistent with a person who needs the use of a cane, and that therefore the RFC is not supported by substantial evidence. The Acting Commissioner counters that the ALJ's RFC finding is supported by the record because there is no medical record indicating that Plaintiff needs a cane or was prescribed a cane. Accordingly, the Acting Commissioner argues that the RFC is supported by substantial evidence. Doc. #17 at 5-15. Whether and to what extent Plaintiff requires the use of a cane is a bit of a mystery on the present record. Accordingly, remand is appropriate to allow further development of the record on this issue.

It is well established that an ALJ, unlike a trial judge, has a duty "to investigate and develop the facts and develop arguments both for and against the granting of benefits." *Lynn P. v. Kijakazi*, 2021 WL 4726531, at *4 (D. Conn. 2021) (quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)). This duty applies even when a plaintiff is represented by counsel. *See Annunziato v. Berryhill*, 2019 WL 156934, at *3 (D. Conn. 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Of course, where there are no gaps or inconsistencies in the record, the ALJ is under no obligation to seek further information. *See Lehman v. Kijakazi*, 2021 WL 4480550, at *5 (E.D.N.Y. 2021) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). And a record will generally be considered appropriately developed when it "contains

sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x 29, 34 (2d Cir. 2013).

Here, the ALJ found that the record—comprised of medical opinions, diagnostic studies, clinical findings from physical examinations, Plaintiff's treatment history, and Plaintiff's reported activities of daily living—supported an RFC of "less than a full range of exertionally light work," with limitations. Doc. #13 at 37 (Tr. 33). Those limitations included lifting, carrying, pushing, or pulling no more than 20 pounds occasionally; occasional climbing of ladders, ropes, or scaffolds; and frequent fingering. *Id.* at 32 (Tr. 28). But the Court agrees with Plaintiff that the ALJ's RFC determination did not adequately account for Plaintiff's testimony that he requires a cane in order to walk, that he is right-handed, that he is no longer able to use his right hand effectively, and he "drops things." *Id.* at 54 (Tr. 50).[5]

While the ALJ acknowledged that Plaintiff had testified at the February 2023 hearing to needing a cane, he did not explicitly reject that testimony and yet, the use of a cane would be inconsistent with the ALJ assessment that Plaintiff could perform "light work." "Light work" is defined as including "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls," as well as "lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 and § 416.967. But a "claimant who requires a cane to balance or walk may be unable to engage in the type of lifting, carrying, or manipulation of objects that is required for light work." *Annunziato*, 2019 WL 156934, at *4 (citing *Clyburn v. Berryhill*, 2017 WL 6014452, at *4 (W.D.N.Y. 2017)). In fact, the agency's own regulations state that "the occupational base for an

---

[5] Although the ALJ found the January 2022 report by consultative examiner Adrian Klufas, M.D. "minimally persuasive," *id.* at 35 (Tr. 31), Dr. Klufas did note that Plaintiff had "sensory deficits in the right hand with diminished dexterity and grasp," *id.* at 92 (Tr. 88). Such a finding may be relevant in the context of how a cane might affect Plaintiff's ability to work.

7

individual who must use [an assistive] device for balance because of significant involvement of both lower extremities . . . may be significantly eroded." SSR 96-9P, 1996 WL 362208. And importantly, there is nothing in the record that contradicts Plaintiff's testimony that he needs or uses a cane.[6]

To the contrary, a medical record from June 14, 2022 reveals that Plaintiff brought a form "from pharmacy medical supply store" that needed to be filled out so he could have a cane. The record does not indicate that the form was not completed, nor does it confirm prescription for a cane. But insofar as Plaintiff testified that he, in fact, uses a case, it is a reasonable inference from this record that the form was provided to Plaintiff by his treatment provider. This same record reflects that the neurological examination was "positive for weakness and numbness" which might also support use of a cane.[7]

In short, the ALJ failed to develop the record with respect to Plaintiff's balance issues and the resulting need or use of a cane. And it is unclear from the current record (1) whether a cane was in fact prescribed; (2) which of Plaintiff's symptoms would be alleviated by use of a cane; (3) and how needing to use a cane might affect Plaintiff's ability to do "light work." *See, e.g.*, *id.* at 355, 357, 581, 627 (stating that the plaintiff "needs a form to be filled out to have a cane."). These are examples of facts that the ALJ should have ascertained for purposes of making a proper RFC determination, because when the record "fails to meaningfully address a claimant's functional physical and/or mental limitations, the ALJ's duty to further develop the

---

[6] Although the report from Dr. Klufas stated that Plaintiff "walks without an assistive device," Doc. #13 at 385 (Tr. 381), this report is dated January 27, 2022—several months before Plaintiff's June 2022 medical appointment when he requested a cane and over a year before his hearing before the ALJ in February 2023, where Plaintiff testified to needing a cane. *See id.* at 581 (Tr. 577), 28 (Tr. 24).

[7] The Court further observes that the medical record supports Plaintiff's assertions that he has recurring balance issues stemming from weakness and numbness on his right side. The ALJ reviewed much of the record that revealed significant symptoms on his right side. Tr. 30-31. But then the ALJ summarily dismissed, without much analysis, Dr. Klufas' report that Plaintiff "frequently loses balance towards the right side." Tr. 31.

8

record is triggered." *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 159 (W.D.N.Y. 2018) (citing *Tankisi*, 521 Fed. App'x at 29). The question of whether Plaintiff needs a cane for balance or walking and whether he was prescribed a cane would seem to be fairly straightforward inquiries for the ALJ.

The case is therefore remanded to the Acting Commissioner for rehearing and for the ALJ to fully develop the record as to Plaintiff's physical RFC—including regarding his need for and use of a cane. Because I am remanding this case for failure to develop the administrative record, Plaintiff's remaining arguments are not addressed. They can be raised before the ALJ on remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. (ECF No. 16) The Acting Commissioner's motion to affirm is DENIED. (ECF No. 17) The Clerk of the Court is directed to enter Judgment in favor of Plaintiff and to remand this matter to the Acting Commissioner for rehearing and further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Memorandum of Decision. On remand, the ALJ shall fully develop the record as discussed above and shall also consider Plaintiff's remaining arguments.

If a future appeal from the Acting Commissioner's decision on remand is filed, it shall be directly assigned to the undersigned.

It is so ordered.

Dated at New Haven this 24th day of February 2025.

/s/
Kari A. Dooley
United States District Judge